UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAMI AWAD,

Plaintiff,

v.

NATIONAL CITY BANK, *et al.*,

Defendants.

Civil Action No.
1:09-cv-0261
Judge James S. Gwin

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

National City Bank, The PNC Financial Service Group, Inc. and Nancy Malta
By their Attorneys,

Karen L. Giffen (0042663)
Giffen & Kaminski, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: (216) 621-5161
Facsimile: (216) 621-2399
Email: kgiffen@thinkgk.com

Gary Lieberman, *pro hac vice*
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 235-5305
Facsimile: (866) 204-4437
Email: glieberman@eapdlaw.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**ARGUMENT** ........ 1

**I. Summary Judgment Is Warranted On Plaintiff Rami Awad's Retaliatory Discharge Claim Because He Cannot Establish Pretext.** ........ 1

**II. Awad Is Not Entitled To A Mixed-Motive Analysis For His Retaliation Claim.** ........ 4

**III. Awad Has Failed To Establish A Genuine Issue Of Material Fact Regarding His On-The-Job Discrimination Claims.** ........ 5

**A. Awad is unable to show that the Bank's stated reasons for not choosing him for various positions are pretextual.** ........ 5

**B. Awad has not established that the Bank treated similarly situated employees more favorably.** ........ 6

**IV. Awad Does Not Have A Sustainable Hostile Work Environment Claim.** ........ 8

**CONCLUSION** ........ 9

# TABLE OF AUTHORITIES[1]

*Beckford v. Geithner,*
2009 WL 3297495 (D.D.C. Oct. 15, 2009) ....................4

*Desert Palace v. Costa,*
549 U.S. 90 (2003)....................5

*Dews v. A.B. Dick Co.,*
231 F.3d 1016 (6th Cir. 2001) ....................1

*Harris v. Forklift Systems, Inc.,*
510 U.S. 17 (1993)....................8

*Haughton v. Orchid Automation,*
206 Fed.Appx. 524 (6th Cir. 2001)....................2

*Kelly v. Senior Centers, Inc.,*
169 Fed.Appx. 423 (6th Cir. 2006)....................8, 9

*Lovelace v. BP Products North America, Inc.*
252 Fed.Appx. 33 (6th Cir. 2007)....................8

*Matima v. Celli,*
228 F.3d 68 (2nd Cir. 2000)....................4

*McNutt v. Bd. of Trustees of U. of Ill.,*
141 F.3d 706 (7th Cir. 1998) ....................4

*Michael v. Caterpillar Fin. Serv. Corp.,*
496 F.3d 584 (6th Cir. 2007) ....................2, 4

*Quintile vv. Medina County,*
2008 WL 2484173 (N.D. Ohio June 17, 2008)....................8

*Serwatka v. Rockwell Automation, Inc.,*
2010 WL 137343 (7th Cir. Jan. 15, 2010) ....................4

*Smith v. Leggett Wire Co.,*
220 F.3d 752 (6th Cir. 2000) .................... 8

*Sybrandt v. Home Depot, U.S.A., Inc.,*
560 F.3d 533 (6th Cir. 2009) ....................2

---

[1] For the Court's convenience, copies of unpublished decisions are attached hereto as Supplemental Exhibit 13

*Tanca v. Nordberg*,
98 F.3d 680 (1st Cir. 1996).....4

*Wright v. Murray Guard, Inc.*,
455 F.3d 702 (6th Cir. 2006) .....4, 5

## ARGUMENT

### I. Summary Judgment Is Warranted On Plaintiff Rami Awad's ("Awad") Retaliatory Discharge Claim Because He Cannot Establish Pretext.[2]

In support of his retaliatory discharge claim, Awad offers four arguments that defendants' stated reason for discharging him – namely, violating National City Bank's (the "Bank") policy by opening accounts for customers without their knowledge or permission and by processing a loan for a customer without her authorization – is pretextual. As explained below, these arguments fail to create a genuine issue of material fact on the required element of pretext. They do not establish that the Bank's stated reason for discharging Awad had no basis in fact, that it did not actually motivate the Bank's decision, or that the stated reason was insufficient to warrant his discharge. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2001).

First, Awad contends that defendants' stated reason is pretextual because Nancy Malta supposedly encouraged him to open customer accounts without first obtaining signed signature cards from the customers and other employees allegedly told him it was okay to have the customer sign this card after he had opened the account. Yet this argument is misguided as Awad was not discharged for failing to have signed customer signature cards before opening the accounts for customers Luptak, Daily, and Rozman. Saikaly Dep. I, Ex. 12; Saikaly Dep. II at 108:19-23, 130:11-18, 141:16-20. [Defendants Memo, Exs. 4, 5].[3] Rather, defendants discharged Awad for opening these accounts without the customers' authorization or knowledge,

[2]Awad has abandoned his claims that he was discriminatorily discharged. "Awad's discharge was *retaliatory*, not *discriminatory*." Opposition at 17 (emphasis in original). He also does not dispute that he failed to exhaust his Title VII failure-to-promote and hostile work environment claims.

[3] Cited excerpts from Saikaly Dep. I and II are attached as Exhibits 4 and 5 to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (hereinafter "Defendants' Memo, Ex. __").

as well as for processing a loan without the customer's authorization. *Id.;* Malta Dep. at 197:24-198:8. [Defendants' Reply, Supp. Ex. 2].[4]

Second, in an effort to downplay the egregiousness of his misdeeds, Awad offers an array of different excuses and justifications for the numerous customer accounts that he opened and the loan that he processed without the customers' approval or knowledge. But Awad's various explanations do not create a triable issue of fact regarding pretext. Based on the customers' written and verbal statements, defendants had more than ample basis to reasonably conclude that Awad had violated the Bank's policy. Additionally, Awad has offered no evidence showing that the Bank did not "honestly believe" that he opened the accounts and processed the loan without the customers' authorization or knowledge. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 533, 559 (6th Cir. 2009) (key inquiry in assessing whether an employer had an honest belief is whether it made a reasonably informed and considered decision before the complained of action). In an attempt to show pretext, Awad argues that his unauthorized opening of Rozman's account and submitting of Quinn's loan application are irrelevant because they supposedly played no role in the Bank's decision to discharge him. But, according to the record evidence, the Bank, in making this decision, considered Awad's transgressions with respect to each of the four customers who provided statements (*i.e.*, Luptak, Daily, Rozman, and Quinn). Saikaly Dep. I, Ex. 12; Saikaly Dep. II at 141:16-20. [Defendant's Memo, Exs. 4 and 5].[5]

---

[4] Cited excerpts from Malta Dep. are attached as Defendants' Memo, Ex. 2. Additional citations to Malta Dep. are attached hereto as Supplemental Exhibit 2 (hereinafter "Defendants' Reply, Supp. Ex. ___").

[5] Awad objects to Saikaly's testimony about what customer Rozman told him. Awad claims that Rozman's statement that she did not authorize Awad to open her account is hearsay. But Saikaly's declaration testimony on this issue is not being offered for the truth of the matter asserted. Rather, it is being offered to demonstrate Saikaly's state of mind and motive in recommending that Awad be discharged. *See Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (*citing Haughton v. Orchid Automation*, 206 Fed.Appx. 524, 532 (6th Cir. 2001)). In other words, the statement shows that Saikaly lacked discriminatory or retaliatory intent.

Third, Awad asserts that the Bank's stated reason is pretextual because he had no financial incentive to open these customers' accounts. Yet whether Awad had a financial incentive is irrelevant. At his deposition, Awad admitted that opening an account without customer authorization is unethical and a violation of Bank policy. Awad Dep. at 196:24-197:8. [Defendants' Memo, Ex. 1]. Similarly, Sany Saikaly testified at his deposition that the complaints from the customers that Awad had opened accounts for them without their permission raised potential issues of fraud and unethical conduct. Saikaly Dep. I at 88:13-25, 90:2-19, 104:4-22, 105:21-106:3. [Defendants Memo, Ex. 4] .

Fourth, Awad contends that he can establish pretext because Malta supposedly initiated the internal investigation into his conduct and she contacted the customers as part of the investigation. Contrary to Awad's contention, a customer complaint (not Malta) prompted the Bank's internal investigation. It is undisputed that on May 15, 2007, customer Luptak came to the Ingomar Branch (where Malta did not work) because he incurred overdraft fees for an account that he never authorized (and which Awad had opened). Felicetti Decl. at ¶¶ 3-4; Saikaly I, Ex. 10, 11, 12; Saikaly Dep. II, Ex. 19. [Defendants' Memo Exs. 3, 4 & 5]. As required by the Bank's Code of Ethics, this customer complaint was reported to the Bank's Loss Avoidance & Investigations (LA&I) Department. Saikaly Dep. I at 88:13-25, 90:2-19, 104:4-22, 105:21-106:3. [Defendants' Memo, Ex. 4]. Branch Managers also routinely contacted customers during internal investigations, rather than a fraud investigator, to avoid raising any undue concerns by the customers. Saikaly Dep. II at 11:11-12:4, 15:6-10. [Defendants' Reply, Supp. Ex. 5]. Further, Awad's criticism of the Bank's internal investigation does not demonstrate pretext as the Sixth Circuit does not require an employer to have a perfect, or even correct, decisional process, so long as it had an honest belief in discharging the plaintiff,

supported by particular facts at the time of the decision. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006); *Michael*, 496 F.3d at 598-99 (holding the Sixth Circuit does not require "that the decisional process used by the employer be optimal or that it left no stone unturned.").

## II. Awad Is Not Entitled To A Mixed-Motive Analysis For His Retaliation Claim.

Awad provides no support for the proposition that a retaliation claim can be brought under a mixed-motive theory under Title VII. Although the matter has not been decided in the Sixth Circuit, it is generally established (most recently confirmed by the Seventh Circuit) that the "mixed-motive" theory is not available to prove a retaliation claim. *Serwatka v. Rockwell Automation, Inc.*, 2010 WL 137343, at *4-5 (7th Cir. Jan. 15, 2010) (*citing McNutt v. Bd. of Trustees of U. of Ill.*, 141 F.3d 706 (7th Cir. 1998)); *Beckford v. Geithner*, 2009 WL 3297495, at *6 n.3 (D.D.C. Oct. 15, 2009); *Matima v. Celli*, 228 F.3d 68, 80 (2nd Cir. 2000); *Tanca v. Nordberg*, 98 F.3d 680, 684 (1st Cir. 1996). These Circuits have concluded that a mixed motive claim based on retaliation was not provided for in the language added to Title VII by the Civil Rights Act of 1991 (42 U.S.C. § 2000e-2(m)), and a retaliation claim must be proven under the *McDonnell Douglas* burden shifting framework. *Serwatka*, 2010 WL 137343, at *4-5.

Even assuming Awad could proceed on a mixed-motive theory based on the alleged comments by Malta prior to the EEOC mediation,[6] this claim should be dismissed. As explained above, given the numerous customers' statements and Awad's own admissions, Defendants have demonstrated that they would have discharged Awad for violating the Bank's policy regardless

[6] Defendants vehemently deny the alleged retaliatory threat by Malta. Malta testified that she was not even aware that Awad filed an EEOC charge at the time of the alleged threat. Malta Dep. at 145:6-16. [Defendants' Reply, Supp. Ex. 2]. Awad's initial EEOC charge alleged that he was denied promotions by the Bank, none of which Malta was involved with. Awad Dep. at 316:13-318:3, Ex. 22. [Defendants' Memo, Ex. 1; Defendants' Reply, Supp. Ex. 1]. In fact, on February 20, 2006, Malta promoted Awad to the position of Consumer Banker in the Wexford Branch and he received a 68% salary increase. Awad Dep. at 257:11-24, 266:21-267:12, Ex. 16. [Defendants' Memo, Ex. 1].

of his protected activity. *See Wright*, 455 F.3d at 711 (*citing Desert Palace v. Costa*, 549 U.S. 90, 93 (2003)).

## III. Awad Has Failed To Establish A Genuine Issue of Material Fact Regarding His On-The-Job-Discrimination Claims.

### A. Awad is unable to show that the Bank's stated reasons for not choosing him for various positions are pretextual.

Regarding the Office Manager position at Wexford, Awad does not dispute that he failed to apply for this position. He also does not dispute that the individual selected for this position (Douglas Neese) had more banking experience and was better qualified.

Similarly, Awad does not contest that the individual selected for the Retail Development Program (David Bacha) had better performance evaluations than Awad in the areas critical to this position (*i.e.*, customer satisfaction skills, leadership qualities and willingness to assist others). Awad's contention that he was better qualified than Bacha because he had an MBA degree is irrelevant as the RDP position did not require an MBA. Pash Decl. at ¶ 3, Ex. A. [Defendants' Memo, Ex. 11]. Nor was an MBA required for the other positions that Awad claims the Bank selected recent college graduates for instead of him.

Furthermore, Awad does not dispute that the Credit Analyst position in the Cleveland market was unavailable in May 2007 and that (as he was told) his interview was solely for informational purposes. Though Awad claims that he applied for this same position in prior years, Awad has failed to show that he was more qualified than the individuals chosen for this position and, thus, he has not met his summary judgment burden.

Moreover, as for the financial analyst position, Awad admitted at his deposition that he was not qualified for this position. Awad Dep. at 252:21-253:8, 348:23-349:24. [Defendants'

Memo, Ex. 1; Defendants' Reply, Supp. Ex. 1]. He also admitted that a Series 6 license was required for the licensed financial consultant position and that he lacked this necessary license. Awad Dep. at 266:2-15, 348:23-349:24. [Defendants' Memo, Ex. 1; Defendants' Reply, Supp. Ex. 1].

**B. Awad has not established that the Bank treated similarly situated employees more favorably.**

In support of his claims that the Bank discriminated and retaliated against him by not sponsoring him for the Series 6 examination, Awad alleges that in 2007 he had a higher ranking than Carol Kaminski ("Kaminski"), an employee on his investment team, and that she did not demonstrate consistent sales before being sponsored for her Series 6 examination in 2007. Declaration of Romin Iqbal, at ¶ 10, Ex. 2-G. Contrary to Awad's claim, in 2006 Kaminski's sales production was consistent, and higher than Awad's:

| Month | Kaminski's Sales | Awad's Sales |
|---|---|---|
| February 2006 | $7,223.40 | n/a |
| March 2006 | $5,176.48 | $0 |
| April 2006 | $748.69 | $0 |
| May 2006 | $7,075.53 | $0 |
| June 2006 | $6,434.53 | $0 |
| July 2006 | $13,569.07 | $1,936.00 |
| August 2006 | $7,590.99 | $7,573.77 |

Opposition, Ex. 3; Awad Dep., Ex. 21, Pl. Ex. A [Defendants' Memo, Ex. 1]; Declaration of Lawrence Feder ("Feder Decl. II") at ¶ 3 (attached hereto as Exhibit A). In late 2006 and early 2007, Kaminiski missed work because her son lost a leg in the Iraq War. Awad Dep. at 511:22-513:19; Feder Decl. II at ¶ 4. [Defendants' Reply, Supp. Ex. 1; Ex. A]. Additionally, unlike Kaminiski, Awad never met his investment goals for three consecutive months. Awad Dep. at 294:13-295:6, Ex. 21, Pl. Ex. A. [Defendants' Memo, Ex. 1]. Thus, Awad has not produced any

evidence that the Bank sponsored other similarly situated employees for the Series 6 examination.

Regarding his claim that the Bank discriminated and retaliated against him by placing him on probation for missing his required sales goals, Awad claims that Kaminski and Jamie McSwaney ("McSwaney") missed their sales goals for the first five months of 2007 and that they were not placed on probation. However, Kaminski is not a relevant comparator for Awad because, as explained above, in late 2006 and 2007 she missed a significant amount of work because of her family medical issue. Awad Dep. at 511:22-513:19; Feder Decl. II at ¶ 4. [Defendants' Reply, Supp. Ex. 1; Ex. A]. As for McSwaney, he is not a relevant comparator because he had obtained his annuity license in December 2006, and the Bank gave employees (including Awad) an opportunity to build their sales records before their sales performance results were assessed. Feder Decl. II at ¶ 6; Malta Dep. at 60:22-61:3. [Defendants' Reply, Ex. A; Supp. Ex. 2]. Once McSwaney's performance was under scrutiny, he was removed from the investment program because of his poor sales results. Feder Decl. II at ¶ 6. [Defendants' Reply, Ex. A].[7]

Tellingly, Awad has not disputed that in 2008 (which was prior to Awad filing suit) the manager of his investment team placed three other employees on the team on probation and placed another employee (Robert Davis) on a performance action plan for not meeting their sales goals. Feder Decl. at ¶ 7, Ex. B; Amended Complaint. [Defendants' Memo, Ex. 7].

[7]Further, comparing Awad's sales numbers in 2007 to McSwaney's sales is not probative. At the time Awad received his probationary notice in January 2007, Awad had his annuity license for over three and one-half years and had been in his position for eleven months. Awad Dep. at 133:19-134:5. [Defendants' Reply, Supp. Ex. 1].

**IV. Awad Does Not Have A Sustainable Hostile Work Environment Claim.**

Workplace conduct that is merely offensive but not sufficiently severe and pervasive is not cognizable under Title VII. *Lovelace v. BP Products North America, Inc.*, 252 Fed.Appx. 33, 41 (6th Cir. 2007). To be severe and pervasive, the work environment must be "permeated with discriminatory intimidation, ridicule and insult that unreasonably interfered with his work performance." *Kelly v. Senior Centers, Inc.*, 169 Fed.Appx. 423, 428 (6th Cir. 2006) (*quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Here, in support of his harassment claim, Awad claims that his co-workers and managers made inappropriate remarks about Arabs and were rude to him in front of customers. These alleged remarks and rude behavior fall well short of demonstrating that Awad was subjected to a severe and pervasive hostile work environment. Indeed, the Sixth Circuit has dismissed hostile work environment claims that were based on conduct that was far worse than anything Awad has alleged in this matter. *Kelly*, 169 Fed.Appx. at 429 (affirming summary judgment in dismissing a hostile work environment claim even though two employees used the word "nigger," a board member was called a "token black" and the plaintiff was subjected to three racist "jokes"); *Lovelace*, 252 Fed.Appx. at 36 (affirming summary judgment of plaintiff's hostile work environment claim in which plaintiff alleged twelve incidents of racial harassment over a two-year period including that African-Americans "smell funny," use of the word "nigger" on three occasions); *Quintile v. Medina County*, 2008 WL 2484173 (N.D. Ohio June 17, 2008) (dismissing hostile work environment claim in gender case where supervisor pursued a relationship with plaintiff, made sexually suggestive comments and said he would like to "f*ck her"); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760-61 (6th Cir. 2000) (holding that plaintiff's hostile work environment claim was unsustainable, though it included allegations that coworkers

made racially offensive comments (such as “nigger” and “gorilla”) and a supervisor circulated a racially offensive cartoon).

Further, Awad does not allege that the alleged harassment interfered with his job performance, which is a requirement for a hostile work environment claim. *Kelly*, 169 Fed.Appx. at 430. To the contrary, Awad himself claims that he was one of the top sales persons in the company. Awad Dep. at 71:18-24. [Defendants’ Reply, Supp. Ex. 1].

Moreover, while Awad claims that Malta and Feder encouraged him to drink alcohol, there is no evidence that they knew Islam prohibits its followers from engaging in social drinking. Additionally, with respect to Awad’s claim that the Bank failed to accommodate his religious beliefs by denying him time off from work for a Muslim holiday, Awad admits that he is “not particularly religious” and the Amended Complaint does not contain a religious accommodation claim. Awad Dep. at 123:3-15; Amended Complaint. [Defendants’ Memo, Ex. 1]. Thus, Awad’s hostile work environment claim should be dismissed with prejudice.

## CONCLUSION

For the reasons discussed above and in defendants' opening summary-judgment brief, the Court should grant defendants The PNC Financial Services Group, Inc., National City Bank, and Nancy Malta’s Motion for Summary Judgment and dismiss the Amended Complaint with prejudice.

Date: January 27, 2010

National City Bank, The PNC Financial Service Group, Inc. and Nancy Malta
By their Attorneys,

/s/ Karen L. Giffen
Karen L. Giffen (0042663)
Giffen & Kaminski, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: (216) 621-5161
Email: kgiffen@thinkgk.com

/s/ Gary Lieberman
Gary Lieberman, pro hac vice
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 235-5305
Email: glieberman@eapdlaw.com

**Certificate of Service and Compliance**

Pursuant to Rule 7.1(f) of the Local Rules of the Northern District of Ohio, counsel for Defendants state that this case has been assigned to the Standard Track. Counsel certifies that Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment complies with the page limitations set forth in Rule 7.1., because the Reply Memorandum of Law, absent the table of contents, the table of authorities and the certificate of service, does not exceed 20 pages in length.

A copy of the foregoing **Defendants' Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment** was filed electronically this 27th day of January 2010. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Karen L. Giffen*
*One of the Attorneys for Defendants*