UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

                                         :

RAMI AWAD,                       :

                       :       CASE NO. 1:09-CV-00261

           Plaintiff,      :

                       :

vs.                        :       OPINION & ORDER

                       :       [Resolving Doc. No. 31]

NATIONAL CITY BANK, *et al.,*    :

                       :

           Defendants.    :

                       :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this employment discrimination case, Defendants National City Bank, PNC Financial Services Group, Inc., and Nancy Malta move for summary judgment on Plaintiff Rami Awad's claims of disparate treatment based upon race, national origin, and religion; retaliation; and hostile work environment.  [Doc. 31.]  Plaintiff Awad opposes the Defendants' motion. [Doc. 46.]  The Defendants have replied.  [Doc. 42.]

For the following reasons, this Court **GRANTS IN PART** the Defendants' motion for summary judgment.

## I. Background

Plaintiff Rami Awad ("Awad") sues Defendants National City Bank, PNC Financial Services Group, Inc., and Nancy Malta, former manager of National City's Wexford Branch (collectively, "Defendants"), for alleged discriminatory discharge, on-the-job treatment, and failure to promote;

Case No. 1:09-CV-00261
Gwin, J.

retaliation; and hostile work environment based on his race (Arabic), national origin (Palestinian),

and religion (Muslim), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000

*et seq.*, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.  [Doc. 5.]  As part of his claim, Awad

maintains that his termination for improperly opening accounts was pretextual and that he was

actually fired in retaliation for filing a February 2007 charge with the Equal Employment

Opportunity Commission ("EEOC").  [Doc. 46 at 1.]

*1. Awad's Employment with National City*

In January 2004, Awad began working at National City's Boardman Branch as a part-time

Customer Service representative. [Doc. 31-2 at 109.]  While at the Boardman Branch, Awad's co-

workers allegedly destroyed his new credit card applications in front of customers and made

comments to him such as "you Arabic people, you come from overseas, you take all the jobs . . . you

have more money than me." [Doc. 46-1, Awad Dep. at 47, 97-98.]  Awad's supervisor at the

Boardman branch, Adam Sofran, also told Awad in the presence of co-workers that Awad was

probably on the "most wanted or watched list."  [*Id.* at 51; Doc. 47-6, Hacker Decl. at 1.]

Later in 2004,  National City transferred Awad to the Newport Glen Branch. [Doc. 46-1,

Awad Dep.  at 103.]  Awad believes his transfer was motivated by Awad's complaints about his co-

workers' and his supervisor's racial comments.  [*Id.*]  Awad alleges that his supervisor at the

Newport Glen Branch, Eleanor Pee, subjected him to discriminatory treatment, such as requiring

only Awad to work six hour shifts without lunch and refusing to schedule Awad's part-time hours

to accommodate his second job, but allowing others to have flexible schedules. [*Id.* at 105-09.]  In

one instance, Awad says that he requested time off for the Muslim holiday of Eid-al-Fitr, and Pee

refused to accommodate his request for time off.  [*Id.* at 107-08.]

Case No. 1:09-CV-00261
Gwin, J.

In 2005, National City promoted Awad to a full-time teller position at the McKinley Branch. Awad alleges that he continued to face harassment from co-workers at the McKinley Branch. Renee Kosek, the head teller at the McKinley branch allegedly asked Awad "why Palestinians are always causing problems" and "why [are] Palestinians always fighting Jewish." [Doc. 46-1, Awad Dep. at 55.] Awad says that he reported Kosek's behavior to his supervisor, Amanda Thiry, but that Thiry did not stop Kosek's objectionable behavior. [*Id.* at 62-64.]

Awad also says that another co-worker, David Bacha, sent an email to Awad suggesting that Awad was a terrorist, but later apologized and said he was joking. [*Id.* at 29.] A bank officer, Frank Snyder, also allegedly told others at the McKinley branch that he overheard "Rami [Awad] saying he was going to blow up something"after hearing Awad speaking Arabic to his mother on the phone. [*Id.* at 54.]

In February 2006, Defendant Malta promoted Awad to Consumer Banker at the Wexford Branch.  [Doc. 31-2 at 111; Doc. 31-11, Ex. D.]  While Awad worked as a community banker, National City warned Awad for not consistently meeting sales goals.  Awad's sales improved between June 2006 and July 2007 [see Doc. 46-2 at Ex. 2A-2B], but he missed other targets.  The Defendants placed him on probation on  January 31, 2007.  [Doc. 31-11 at 2, Ex. A; Doc. 31-5.]

Awad alleges that the harassment continued and worsened at the Wexford branch.  Karen Carson, the Wexford branch relationship banker, allegedly told Awad that the Bank's customers "don't like Muslims in this country." [Doc. 46-1, Awad Dep. at 469.] After Awad asked Carson about the company's accident insurance, Carson allegedly remarked to others that "Rami is trying to build a bomb at his house." [*Id.* at 41-42; *see also* Doc. 36-8, Phillips Dep. at 22.] Awad alleges that his supervisor at Wexford, Defendant Malta, told Awad that if he did not drink then he should

Case No. 1:09-CV-00261
Gwin, J.

not work in banking, even though drinking is against his religion. [Doc. 31-2, Awad Dep. at 73.]

Awad complained to Malta about these comments and insults.  In response, Malta allegedly said that

she "doesn't want to hear about it." [Doc. 46-1, Awad Dep. at 43.]  Awad alleges that he then

contacted the District Manager, Chuck Larkin, who said he would try to transfer him. [*Id.* at 44.]

*2. Denial of Promotions and Awad's First EEOC Complaint*

Awad alleges that during his employment at the Bank, he was discriminatorily denied several

promotions. [Doc. 31-4, Awad Dep. at 460.]  Awad claims that National City discriminated against

him when it did not select him in 2006 to participate in the Retail Development Program.  Awad says

he was more qualified than the individual selected, David Bacha. [Doc. 31-2, Awad Dep. at 85, 114.]

Awad also claims that he was discriminated against in not being selected for Office Manager

positions at both the Newport Glen and Wexford branches. [Doc. 46-1, Awad Dep. at 84.]  Awad

also applied for a licensed financial consultant position.  However, regarding the licensed financial

consultant position, Awad acknowledges that he did not have the license necessary to qualify

because he had not taken the Series 6 exam. [Doc. 31-3, Awad Dep. at 266.]  Awad claims that

despite his supervisor's recommendation, the Bank did not sponsor Awad in 2006 for the Series 6

examination. [Doc. 46-1, Awad Dep. at 185-86.]  Awad also claims that the Bank interviewed and

did not select him for a Credit Analyst position in Cleveland in 2007. [*Id.* at 83, 244-45.]

Awad claims that the positions he sought were filled by white, non-Arab, non-Muslim

individuals. [Doc. 46-1, Awad Dep. at 84, 94.]  Awad contacted Human Resources ("HR") several

times alleging discriminatory failure to promote, and HR told him to "work on [his] resume" but

would not specify how to improve it. [*Id.* at 87-92.]

In February 2007, Awad filed a charge with the Equal Employment Opportunity Commission

-4-

Case No. 1:09-CV-00261
Gwin, J.

("EEOC") claiming that National City did not promote him because of his national origin. [Doc. 47-10.] Awad alleges that before a scheduled mediation of his EEOC claim, Supervisor Malta pulled Awad into her office and threatened to have him fired. [Doc. 46-1, Awad Dep. at 312] Awad subsequently settled the EEOC charge, saying he relied upon a statement by the Bank's attorney that Bacha had received no raise with his promotion. [*Id.* at 326-331.] Awad subsequently learned from Bacha that he had received a raise. [*Id.* at 327.]

After filing the EEOC charge, Awad claims his overall treatment got worse and that Malta yelled at him more frequently. [*Id.* at 337-38.]

*3. Events Leading to Awad's Termination*

On May 15, 2007, a customer complained to the Branch Manager at the Ingomar, PA location about an account that he was unaware had been opened. [Doc. 31-7, Felicetti Decl. at 2.] That same day, an Ingomar branch employee discovered another account arguably opened without the customer's awareness. [*Id.* at 2-3.] The Defendants says that Awad had been responsible for both accounts. [Doc. 31-6, Malta Decl. at 1.] As a result, Malta opened an investigation into potential improper or fraudulent activity by Awad. Malta contacted the Bank's Loss Avoidance and Investigations department. [Doc. 31-8, Saikaly Dep. at 104-05.] The Loss Avoidance and Investigations Department assigned Sany Saikaly, who is of Middle Eastern and of Palestinian descent, to conduct an internal investigation. [Doc. 31-8, Saikaly Dep. at 36-37, 88, 90.]

During the investigation, Awad admitted that he had failed to obtain proper signature cards when he opened some accounts, but denied that he opened accounts without customer authorization. [Doc. 31-4, Awad Dep. at 411.] Within weeks of the start of the investigation, another customer reported that Awad submitted a loan application without her consent. [Doc. 31-6, Malta Dep. at

-5-

Case No. 1:09-CV-00261
Gwin, J.

228.] In response, Awad claims that he mistakenly submitted the application and that the loan department told him that it ended the application once he notified them of the error. [Doc. 46-1, Awad Dep. at 432]. As part of the investigation, the Defendants requested and obtained signed and notarized statements from the customers explaining that the accounts and loan were not authorized. [Doc. 31-6, Malta Dep. at 202-04, 215, 226-28; Doc. 31-10, Malta Decl. at 2, Exhibit A.] Investigator Saikaly recommended, and the Defendants agreed, to terminate Awad. [Doc. 31-9 Saikaly Dep. II at 108, 130.] National City fired Awad, effective June 25, 2007. [Doc. 31-4, Awad Dep. at 452-55.]

*4. Awad's Second EEOC Complaint and Filing of this Lawsuit*

After his June 2007 termination, Awad filed another charge of discrimination with the EEOC. [Doc. 31-4 at 454, 456]. With this second charge, Awad alleged that National City discriminated against him based upon his race, religion, national origin, and in retaliation for participating in a protected activity by placing him on administrative leave and firing him. [Doc. 31-5 at 21.]

After receiving a right to sue letter, on February 4, 2009 Awad filed a complaint alleging discriminatory discharge, on-the-job discrimination, failure to promote, retaliation, and hostile work environment based on his race, national origin, and religion. [Doc. 1, Doc. 5.] On January 4, 2010, the Defendants filed a motion for summary judgment as to all claims. [Doc. 31 at 1] The Plaintiff responded and the Defendant has replied. [Doc. 42, 46, 47.]

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Case No. 1:09-CV-00261
Gwin, J.

Fed. R. Civ. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative

Case No. 1:09-CV-00261
Gwin, J.

evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."

*60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

With his Amended Complaint, Plaintiff Awad brings the following claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and Ohio Rev. Code § 4112: (1) race, national origin, and religious discrimination; (2) retaliation; and (3) hostile work environment.  [Doc. 5.]  The Defendants seek summary judgment in their favor on all claims. [Doc. 31.]

Absent direct evidence of discrimination, claims brought pursuant to Title VII's anti-discrimination provisions, 42 U.S.C. § 1981, and Ohio Rev. Code § 4112 are subject to the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).  Under *McDonnell Douglas*'s three-step burden shifting framework, a plaintiff must first set forth a *prima facie* case of discrimination.  *Newman,* 266 F.3d at 405.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  If the employer carries this burden, the plaintiff must them prove by a preponderance of the evidence that the reasons offered

-8-

Case No. 1:09-CV-00261
Gwin, J.

by the employer are a pretext for discrimination.  *Id.*

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.  *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007).  If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times.  *Id.*

On a motion for summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

### A. Disparate Treatment

A plaintiff can establish a prima facie of discrimination based upon race, national origin, or religion under Title VII, Section 1981, and  Ohio Rev. Code. § 4412 by introducing direct evidence of discrimination or by using the *McDonnell Douglas* paradigm to infer discrimination from circumstantial evidence.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802  (1973); *see also Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 349 (6th Cir. 1997).  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper v. Potter,* 505 F.3d 508, 516 (6th Cir. 2007) (citations omitted).  Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.*

Case No. 1:09-CV-00261
Gwin, J.

To establish a prima facie case of discriminatory disparate treatment using the *McDonnell Douglas* paradigm, a plaintiff must show that: (1) he was a member of a protected class at the time of the discrimination; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than a similarly situated, non-protected employee. *Wright v. Murray Guard*, 455 F.3d 702, 707 (6th Cir. 2006).

An adverse employment action is one that changes the terms of employment in a way that is materially adverse to the plaintiff. *Wills v. Pennyrile Rural Elec. Coop. Corp.,* 259 F. App'x. 780, 783 (6th Cir. 2008).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

A similarly situated employee is one who has the same supervisor, was subject to the same standards of conduct, and engaged in "nearly identical" conduct, without differentiating or mitigating circumstances that would distinguish the employee's conduct or the employer's response. *Mallory v. Noble Corr. Inst.*, 45 F. App'x. 463, 471-72 (6th Cir. 2002); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  The Sixth Circuit has instructed that courts "should not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (holding that employees were similarly situated when they were charged with the same duties and had the same supervisor).  When a plaintiff is accused of violating company policies, the question is whether the employer has a rational reason for treating the plaintiff

Case No. 1:09-CV-00261
Gwin, J.

differently. When employees engage in different conduct, they are not similarly situated because the employer would be rational in disciplining them differently. *See, e.g., Palmer v. Potter,* 97 F. App'x 522, 524-25 (6th Cir. 2004); *Hardy v. Eastman Chem. Co.,* 50 F. App'x 739, 743 (6th Cir. 2002).

Awad, a Palestinian-American, Muslim male, alleges that the Defendants discriminated against him because of his race, national origin, and religion in promotion, discipline, compensation, and termination. [Doc. 5 at 11, 14, 19, 24, 27-28.] Because the Plaintiff does not provide direct evidence of race, national origin, or religious discrimination, the Court applies the *McDonnell Douglas* framework.

*1. Promotion*

In a discrimination claim based on a failure to promote, the plaintiff bears the initial burden of establishing that he: (1) is a member of a protected class; (2) applied and was qualified for a promotion; (3) was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Ledbetter v. Gilley,* 385 F.3d 683, 690 (6th Cir. 2004) (citations omitted).

Awad claims that because of his race, national origin, and religion, National City denied him several promotions, and instead gave the positions to non-Arab, non-Muslim employees. [Doc. 5 at 4.] Awad claims that he applied for, and that National City rejected his application for, positions as office manager, credit analyst, and financial analyst[1]. [Doc. 46-1, Awad Dep. at 82-84, 239-40.] Awad also alleges that National City denied his request to participate in the Retail Development Program ("RDP") and refused to sponsor him for the Series 6 examination, even though, he claims,

---

[1] Awad also claimed during his deposition that he applied for a position in "accounting." [Doc. 46-1, Awad Dep. at 240.] However, Awad provides no evidence of the qualifications for this position, his application for the position, or other individuals who received the position. Accordingly, he has failed to make out a prima facie case of discrimination in promotion for any "accounting" position.

Case No. 1:09-CV-00261
Gwin, J.

he was more qualified than others who were selected. [*Id.* at 84-85, 239-40.]

### a. Office Manager Positions

Awad alleges that he was discriminated against when he was denied the position of Office Manager in both the Newport Glen and Wexford offices. [Doc. 46-1, Awad. Dep. at 84.]  In 2005, Awad apparently submitted an application for office manager position in the Newport Glen office. However, the selectors determined that Awad was not qualified for that position. [Doc. 31-15, Pash Decl. Ex. D.]  Furthermore, Awad has not presented evidence that the individual selected for this position was of Non-Arab, Non-Muslim descent.  Accordingly, Awad's claim for discriminatory failure to promote based upon the Newport Glen branch office manager position fails as Awad as not established the second and fourth prongs of his prima facie case.

Awad also claims to have applied for the office manager position in the Wexford branch in 2007.  [Doc. 46-1, Awad Dep. at 84, 253.]  However, former National City Manager Malta says that the HR Department never received Awad's completed application, because Awad never submitted his resume: "No. He [Awad] stated that he was interested in the position and was going to apply for it, but I never received a formal application from HR." [Doc. 31-6 at 47; Doc. 31-10 at 2.]   The Bank explained to Awad that it had not received his resume. [Doc. 46-1, Awad Dep. at 86.] Thus, Awad has not presented sufficient evidence to create a material issue of fact as to whether Awad actually applied for the office manager position in Wexford.

Even if the Court assumes that Awad has made out a prima facie case with respect to the Wexford office manager position, this claim fails because Awad has not shown that the Bank's reasons for selecting Douglas Neese for the position are pretextual.  The Defendants claim that Malta selected Neese over Awad because he had more experience in banking and was better qualified for

-12-

Case No. 1:09-CV-00261
Gwin, J.

the position.  [*See* Doc. 31-10, Malta Decl. at 2, *see also id.*, Ex. B.] Awad has not shown that

Malta's proffered reasons had no basis in fact, did not actually motivate her in choosing Neese, or

that they were insufficient to warrant her decision.  *See Dews,* 231 F.3d at 1021 (6th Cir. 2000).

Thus, Awad's claim for discriminatory failure to promote based upon the Wexford Office Manager

position fails.

Accordingly, Awad has failed to make a claim of discriminatory failure to promote based

upon the office manager positions.

### b. Credit Analyst Positions

Awad alleges that he applied for multiple credit analyst positions at National City.  [Doc 46-

1, Awad Dep. at 83.]  In 2006, he apparently applied for a credit analyst position, but was not

qualified for the position.  [*See* Doc. 31-15, Pash Decl., Ex. D.] Awad also claims that he

interviewed for a credit analyst position in Cleveland in 2007. [Doc. 46-1, Awad. Dep. at 83, 244-

45.]  The Defendants claim that no credit analyst position was open in Cleveland at that time, and

that Awad knew that it was an "informational" interview only. [Doc. 31-16, Schultz Decl. at 1, Ex.

A.]  In any event, Awad has failed to make out a prima facie case on discriminatory treatment based

on National City's failure to promote him to a credit analyst position.  He has not identified a

similarly situated non-Muslim, non-Arabic individual who was promoted to the credit analyst

position instead of him.  A prima facie case requires a showing that the similarly situated non-

protected employee was treated better.  Accordingly, this claim fails.

### c. Financial Analyst Positions

Awad also claims that he applied for various positions as a financial analyst at National City.

However, as Awad admitted in his deposition, he was not qualified for these positions because he

Case No. 1:09-CV-00261
Gwin, J.

was not a licensed financial consultant ("LFC").[2/] [Doc. 46-1, Awad Dep. at 249; *see also* Doc. 31-15, Pash Decl. Ex. D.] Because Awad was not qualified for the financial analyst positions, he cannot make a prima facie case of discriminatory failure to promote with respect to these positions.

### d. Retail Development Program

Awad also alleges that National City discriminated against him when he was not selected for National City's Retail Development Program ("RDP"). Awad claims that he was more qualified than David Bacha, a non-Arab, non-Muslim individual selected for the program. [Doc. 46-1, Awad Dep. at 84-85.] Awad claims an advanced degree and more experience in retail banking than Bacha. [Doc. 31-2, Awad Dep. at 85, 114.] Responding, the Bank argues that it hired Bacha because of his superior performance and that an advanced degree was not required for the position. [Doc. 31-15, Pash Decl. at 2-3, Exhibits A-C.] Awad's performance reviews for the months preceding his application to the RDP program showed that he had not been performing satisfactorily in multiple areas, while Bacha received better performance evaluations. [*Id.* at Exhibits B-C.] Accordingly, the Court finds that the Plaintiff has failed to show that Defendant's asserted reasons for selecting Bacha over Awad were pretexts for discrimination, and finds that the Defendants are entitled to summary judgment with respect to this claim.

### e. Series 6 Exam

Awad alleges that the Defendants discriminated against him by not sponsoring him for the Series 6 exam. Awad needed to pass the exam to become a LFC, and being a LFC was necessary for many of the positions that Awad sought within the Bank. [Doc. 46-1, Awad Dep. at 249-50.]

Awad claims that his 2006 supervisor, Vincent Panucci recommended him for the Series 6

---

[2/] Awad also claims that he was denied the opportunity to become a LFC because the Defendants would not sponsor him for the Series 6 exam. [Doc. 46-1, Awad Dep. at 249-50.] This claim is discussed *infra*.

Case No. 1:09-CV-00261
Gwin, J.

exam, and supported him with an email to Malta and Larkin.  [Doc. 46-1, Awad Dep. at 261.]

Despite Panucci's recommendation, Malta and Lawrence Feder, who replaced Panucci as the Retail

Investment Officer overseeing Awad's team, did not allow Awad to take the exam . [*Id.* at 302.]  The

Defendants respond that the Bank sponsors only those employees who have consistent sales

performances for the exam.  [Doc. 31-11 Feder Decl. at 2; *see also* Doc. 31-12, Davis Dep. at 51-52.]

The Defendants say that they did not sponsor Awad for the exam because of his inconsistent sales

performance.  [Doc. 31-11, Feder Decl. at 2.]

    In support of his claim, Awad alleges that the Bank sponsored a non-Arab, non-Muslim

individual, Carol Kaminski, to take the Series 6 exam even though she also failed to meet sales

goals. [Doc. 46 at 8; Doc. 46-2, Iqbal Decl. at Ex. 2E-2G.]  The Defendants respond that Kaminski

had consistent sales throughout most of 2006, and that in late 2006 and early 2007, just before they

promoted her, Kaminski missed work due to a family medical situation. [Doc. 42 at 6; Doc. 42-8,

Feder Decl. II at 2.]  The Plaintiff has not shown that the Defendant's reasons for selecting Kaminski

to take the Series 6 exam were pretextual.  Accordingly, this claim fails.

    For the reasons stated above, Awad's claim for discriminatory failure to promote fails, and

the Court grants the Defendants summary judgment on this claim.

*2. Discipline*

    Awad also alleges that the Defendants discriminated against him in discipline.  The

Defendants placed Awad on probation on January 31, 2007, after he had he consistently failed his

sales goals.  [Doc. 31-11, Feder Decl. at 2, Ex. A; Doc. 31-5 at Ex. 21]   The Defendants have

presented evidence that they gave similar discipline to others who fell below sales requirements.

[Doc. 31-11 at Ex. B.]  In response, the Plaintiff argues that these "comparators" are irrelevant

-15-

Case No. 1:09-CV-00261
Gwin, J.

because the Defendants disciplined them after the time that Awad left National City.

The Plaintiff offers three other individuals, Carol Kaminski, Jamie McSwaney, and Robert Davis, who he argues are evidence that other non-Arab, non-Muslim individuals who also failed to meet their sales goals were not similarly disciplined. [Doc. 46 at 8-9.]   In the case of Davis, the Plaintiff provides one chart comparing Davis's and Awad's sales rankings. [Doc. 46-2 at Ex. 2D.] However, the Plaintiff does not present evidence that Davis consistently failed to meet his sales goals during this period.  Moreover, the Defendants presented evidence that they did discipline Davis at a later date for not meeting his sales goals. [Doc. 31-11, Ex. B at 19.]  Accordingly, the Court finds that Awad has failed to establish a prima facie case of discriminatory discipline based upon Davis as a comparator.

The Defendants offer nondiscriminatory reasons as to why they did not discipline either Kaminski or  McSwaney in January 2007.  As described above, the Bank gave Kaminski special accommodations during this period due to a family medical emergency.  The Defendants claim that McSwaney received his annuity license in December 2006; that the Bank gave all employees an opportunity to establish their sales records before their performance was assessed; and that once the Bank did assess McSwaney's performance, it removed him from the investment program because of his poor sales results. [Doc. 42 at 7; Doc. 42-8, Feder Decl. II at 2.]  The Court finds that Awad has not shown that the Defendants' legitimate proffered reasons for disciplining Awad and not Kaminski or McSwaney in January 2007 are pretexts for discrimination.

Because Awad has not established a prima facie case of discriminatory discipline based upon Davis, and has not shown that the Bank's reasons for not disciplining McSwaney and Kaminski in January 2007 were pretextual, his claim of discriminatory discipline fails.

Case No. 1:09-CV-00261
Gwin, J.

*3. Compensation*

In his Amended Complaint, Awad alleges that the Defendants discriminated against him based on race, religion, and national origin by ". . . paying Plaintiff lower wages than similarly situated Non-Saudi Arabian/Palestinian, Non-Arab employees. . . ." [Doc. 5 at 14.]  However, Awad presents no evidence that his compensation differed from similarly situated, non-protected employees.  Thus, Awad fails to present a prima facie case of discrimination in compensation.

*4. Termination*

In his Amended Complaint, Awad also claims that the Defendants discriminated against him by terminating him because of his race, religion, and/or national origin.  [Doc. 5 at 11, 14, 19, 24, 27-28.]  To make out a case of discriminatory termination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was terminated; (3) he was qualified for the position; and (4) he was replaced by a person outside a protected class or was treated differently than a similarly situated, non-protected employees.  *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501 (6th Cir. 2007).

The Defendants argue that the discriminatory termination claim fails because Awad has not presented evidence that a similarly situated non-Arabic and non-Muslim employee was treated differently. [Doc. 31-1 at 5.] Specifically, the Defendants say that Awad "has failed to identify a single employee that the Bank declined to discharge for opening an unauthorized customer account or [for] processing a loan without the customer's approval. [*Id.*]

In his response, Awad argues that the defendants "misconstrue Awad's retaliatory-discharge claim . . . [because] Awad's discharge was *retaliatory* not *discriminatory*. [Doc. 46 at 17 (emphasis in original).]  Acknowledging this argument, the Defendants say that Awad has thus abandoned his

-17-

Case No. 1:09-CV-00261
Gwin, J.

claim of discriminatory discharge. [Doc. 42 at 1, n. 2.]  In any event, the Court finds that Awad's

discriminatory termination claim fails as a matter of law because Awad has not established a prima

facie case.  He presents no evidence either that he was replaced by person outside his protected class

or that he was treated differently than a similarly-situated, non-protected employee.[3/]

For the foregoing reasons, the Court finds that the Plaintiff's claims of disparate treatment

under Title VII, 42 U.S.C. § 1981 and O.R.C. § 4112 fail as a matter of law.  Accordingly, the Court

**GRANTS** the Defendants' motion for summary judgment with respect to the Plaintiff's disparate

treatment claims.

### B. Retaliation

Title VII prohibits retaliatory actions against employees who oppose, report, or participate

in investigations involving conduct that allegedly violates Title VII.  *See* 42 U.S.C. § 2000e-3(a).

Because the Plaintiff relies on circumstantial evidence, the *McDonnell Douglas* paradigm again

applies.[4/]

---

[3/]In his opposition brief, Awad also argues that a mixed-motive analysis applies to his retaliatory termination claim. [Doc. 46 at 19.] As discussed below, this argument fails because mixed-motive analysis is not available to retaliation claims.  *See* note 4, *infra*.  However, Awad does not argue that the Court should conduct a mixed-motive analysis to any discriminatory discharge claim. [*See* Doc. 46 at 17-19.]

[4/]In his opposition brief, the Plaintiff argues that the Court should apply a mixed-motive analysis to his retaliatory discharge claim. [*See* Doc. 46 at 19.]  Congress enacted the "mixed motive" analysis for claims of discrimination based on race, color, religion, sex, or national origin with Section 107(a) of the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e-2(m). However, the majority of the Courts of Appeals that have considered the issue have concluded that Section 2000e-2(m) does not apply to Title VII retaliation cases.  *See* *Marbly v. Rubin*, 188 F.3d 508 n. 2 (Table), 1999 WL 645662 (6th Cir. 1999)(Section 107(a) "has been found to be inapplicable in Title VII retaliation cases," and citing approvingly *McNutt*, *Woodson*, and *Tanca*); *Speedy v. Rexnord Corp.*, 243. F.3d 397 (7th Cir. 2001); *McNutt v. Bd. of Trustees of Univ. of Ill.*, 141 F.3d 706, 709 (7th Cir. 1998); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 933-35 (3d Cir. 1997); *Tanca v. Nordberg*, 98 F.3d 680, 685 (1996). *See also* *Gross v. FBL Financial Srvcs., Inc.*, 129 S.Ct. 2343, 2350 (2009)(mixed motive jury instruction never proper in ADEA case because not statutorily authorized); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010)(reaffirming *McNutt* and interpreting *Gross* to imply "that when another anti-discrimination statute lacks comparable [express incorporation of the mixed-motive framework], a mixed-motive claim will not be viable under that statute").  *But see* *Smith v. Xerox Corp.*, __ F.3d. __, 2010 WL 1053837 (5th Cir. March 24, 2010)(holding that mixed-motive jury instruction was proper in Title VII retaliation case).  Accordingly, the Court finds that Awad is not entitled to a mixed-motive analysis of his retaliation

(continued...)

Case No. 1:09-CV-00261
Gwin, J.

If plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. *Id.* at 526.  Finally, if the Defendant articulates such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reason "is merely a pretext for discrimination." *Id.*

> The Supreme Court has  noted that Title VII:
>
> protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (internal citations omitted).  This anti-retaliation provision does not protect against "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

A plaintiff may use temporal proximity between an employer learning of an EEOC charge and an adverse employment action to create an inference of causation.  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  Where some time elapses between the two events, the plaintiff "must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*

Plaintiff Awad filed an EEOC complaint against National City on February 15, 2007 for failure to promote based on national origin.  [Doc. 31-5 at 14.] National City eventually settled this

---

[4] (...continued)
claim.

Case No. 1:09-CV-00261
Gwin, J.

EEOC claim.[5/]  Here, Awad claims that the Defendants retaliated against him for complaining about discrimination and for filing the February 2007 EEOC complaint.  Awad says the Defendants fostered a hostile work environment, disciplined him, denied him promotions, and terminated his employment.  [Doc. 5 at 16, 21, 29.]

*1. Termination*

Awad's primary claim is that the Defendants terminated him in retaliation for his EEOC complaint and for complaining about discriminatory treatment.  To survive the Defendants' motion for summary judgment on his retaliation claim, Awad must provide evidence sufficient to convince a jury that (1) he engaged in protected activity; (2) the Defendants had knowledge of his protected conduct; (2) the Defendants subsequently terminated him; and (4) there was a causal connection between the protected activity and the termination. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).  If the Plaintiff establishes a prima facie case, the burden then shifts to the Defendants to offer a legitimate, nondiscriminatory reason for Awad's termination.  *Id.*  The burden then shifts back to Awad to show that the Defendants' offered nondiscriminatory reasons are merely a pretext for retaliation.  *Id.*

The Defendants do not argue that Awad has not established a prima face case of retaliatory discharge.[6/]  Rather, the Defendants argue that they are entitled to summary judgment on this claim

---

[5/]The Plaintiff alleges that he settled the EEOC claim only because of threats and misrepresentations the Defendants made to him before and during the mediation. [Doc. 5 at 7; Doc. 46-1, Awad Dep. at 326-27.] The Defendants deny any such threats or misrepresentations. [Doc. 42 at 4, n. 6.]

[6/]Although not in dispute, the Court finds that the Plaintiff has made a sufficient showing to make a prima facie case of retaliatory discharge.  Awad's filing of an EEOC Complaint is protected activity.  While the Defendants suggest that Defendant Malta did not have knowledge of the EEOC Complaint [*see* Doc. 42 at 4, n. 4], Awad has presented evidence that he had to ask Malta for the day off to attend his EEOC mediation and claims that Malta confronted him before the mediation [*see* Doc. 46-1, Awad Dep. at 312-14].  Awad has thus presented at least a question of material fact as to whether Malta knew about the EEOC charge at the time he was terminated.  The Defendants adversely affected Awad's employment conditions by terminating him.  Finally, the temporal proximity between the filing of the EEOC (continued...)

Case No. 1:09-CV-00261
Gwin, J.

because the Plaintiff has not established pretext. [Doc. 31-1 at 18; Doc. 42 at 1-4.]  The Defendants

claim that they fired the Plaintiff after an internal investigation revealed that he had improperly

opened multiple accounts and processed a loan without the customers' authorization.

On May 15, 2007, customer Stephan Luptak complained at National City's Ingomar branch

about fees he had incurred due to a new account he said he had not authorized. [Doc. 31-7, Felicetti

Decl. at 1.] The Bank learned that Awad had opened the account with a balance of $0.01 and that

it did not have a signature card on file.  [*Id.*]  That same day, the Ingomar branch learned that

someone at the Wexford branch had also opened an account for customer Matthew Daily for $0.01

and without a signature card.  [*Id.*]  The Ingomar branch manager informed Malta, who determined

that Awad had been responsible for both accounts and opened an investigation into potential

improper or fraudulent activity by Awad.  [Doc. 31-6, Malta Decl. at 1.]  Malta contacted the Bank's

Loss Avoidance and Investigations department, which assigned Sany Saikaly, who is of Palestinian

descent, to conduct an internal investigation. [Doc. 31-8, Saikaly Dep. at 36-37, 88, 90, 104-05, 108-

09.]

During the investigation, Saikaly discovered that Awad had opened an account for a third

customer, Jennifer Rozman, without a proper signature card. [Doc. 31-9, Saikaly Dep. II at 32.]

Within weeks, another customer, Kimberly Quinn, complained when she received a notice that the

Bank had denied her a loan application.  She said she had not authorized the application.  [Doc. 31-

6, Malta Dep. at 226-28.]  As part of the investigation, Malta contacted the customers and requested

and obtained signed and notarized statements from the customers explaining that the accounts and

---

[6]/(...continued)

charge in February 2007, the subsequent mediation, the initiation of the investigation in May 2007, and Awad's ultimate
termination in June 2007 "is significant enough to constitute evidence of a causal connection for the purposes of
satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Case No. 1:09-CV-00261
Gwin, J.

loan were not authorized. [Doc. 31-6, Malta Dep. at 202-04, 215, 226-28; Doc. 31-10, Malta Decl.

at 2, Exhibit A.] Following Saikaly's recommendation, the Bank ultimately terminated Awad at the

conclusion of the investigation.

Awad claims that the Bank's reasons for terminating him are pretextual. In support of his

claim of pretext, Awad denies that he opened accounts without customer authorization, while he

admits that he may not have obtained all the proper signature cards. [Doc. 31-4, Awad Dep. at 411.]

Awad says that customer Luptak specifically authorized Awad to open the account in question when

Awad told him about a promotion the Bank was having at the time. [Doc. 46-1, Awad Dep. at 68.]

Awad claims that customer Rozman authorized a similar account during the promotion. [*Id.* at 382.]

Awad claims that he never received internal notices alerting him that Rozman's signature card was

missing. [*Id.* at 387-88.] Moreover, Rozman returned to the Bank and signed a signature card at a

later date. [*Id.* at 389-90.] Awad claims that he does not even remember customer Daily. [*Id.* at

67.] Finally, Awad alleges that he likely submitted the loan application by mistake, and, although

he does not specifically remember customer Quinn, he claims that on one occasion he realized he

had made a mistake in processing a loan, and contacted the loan department, which told him that it

eliminated the application once he notified them of the error. [*Id.* at 438-32.] Awad alleges that the

investigation was conducted unfairly because Malta was biased against him and because Saikaly

would not permit him to consult any notes before questioning him about the incidents. [*Id.* at 392,

396.] The Plaintiff argues that the entire investigation into his alleged fraudulent conduct was

pretextual. He says Malta wanted to find a reason to fire him and that the Defendants' actual motive

for terminating him was retaliation.

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in

Case No. 1:09-CV-00261
Gwin, J.

fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (2000). In evaluating the Plaintiff's rebuttal evidence, the Court considers whether, viewing the evidence before it and drawing reasonable inferences in favor of the Plaintiff, a reasonable jury could find that the Defendant's reason for terminating Awad was pretextual, and that they actually terminated the Plaintiff in retaliation for his claims of national-origin discrimination in promotion. *See Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004); *compare Imwalle*, 515 F.3d at 547 (articulating standard of review on appeal of district court's denial of defendants' motion for judgment as a matter of law).

The first and third types of rebuttals are "direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff." *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 472 (6th Cir. 2002)(quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)). The first type of rebuttal consists of evidence that the reasons given by the employer "simply did not happen." *Id.* at 471. The third type "ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* at 471-72.

Plaintiff Awad fails to make a showing of either of these two types of rebuttal evidence. With respect to the first prong, while the Plaintiff argues that the accounts were authorized, the customer's signed statements are evidence that the Defendant's reason for Awad's termination did have a basis in fact. [*See* Doc. 31-10, Malta Decl. Ex. A.] Moreover, Awad admitted that his operator ID appeared on Quinn's loan application. [Doc. 46-1, Awad Dep. at 429.] Thus the Plaintiff has not shown that there is "no basis in fact" for the Defendant's reasons. The Plaintiff also offers no

-23-

Case No. 1:09-CV-00261
Gwin, J.

evidence that the Defendants' proffered reasons would be insufficient to merit his termination.
While Awad claimed in his deposition that "a lot of people" have opened accounts without
immediately obtaining signature cards and that it's "no big deal" [*id.* at 385], he does not present
evidence of any other specific individual who improperly opened accounts or processed loans who
the Defendants did not terminate.

That leaves only the second option–that the employer's articulated reason did not actually
motivate the discharge.  "In this type of showing, the plaintiff attempts to indict the credibility of his
employer's explanation by showing circumstances which tend to prove that an illegal motivation was
*more* likely than that offered by the defendant."  *Imwalle v. Reliance Medical Products*, 515 F.3d
531, 546 (6th Cir. 2008)(quoting *Manzer*, 29 F.3d at 1084)(emphasis in original).  In other words,
the Plaintiff must show "that the sheer weight of the circumstantial evidence ... makes it more likely
than not that the employer's explanation is a pretext, or coverup."  *Abdulnour*, 502 F.3d at 503
(quoting *Manzer*, 29 F.3d at 1084).

The Plaintiff has offered circumstantial evidence that the Defendants' conduct was
retaliatory.  As described above, employees at the Wexford Branch harassed Awad.  Malta was not
receptive to his complaints and was herself not understanding about Awad's religious practices.
Moreover, Awad filed his EEOC Complaint in February 2007, within three months of the
Defendants' investigation into Awad's conduct.  Awad further alleges that Malta specifically
threatened him with retaliatory action before his EEOC mediation.  [Doc. 46-1, Awad Dep. at 312-
13.]  Both Saikaly and Malta testified that Awad had no financial motive to open or process any of
the allegedly fraudulent accounts and loans. [Doc. 31-9, Saikaly Dep. II at 56; Doc. 31-6, Malta Dep.
at 294-95.]  Awad claims that his actions were not fraudulent, that other employees committed

Case No. 1:09-CV-00261
Gwin, J.

similar mistakes, and that the Defendants singled him out for punishment.  Moreover, Awad never

received a fax sent to his branch regarding the Rozman account [*see* Doc 31-8, Saikaly Dep. I at 109;

Doc. 46-1, Awad Dep. at 387-88], and Malta allegedly told Awad that his challenged conduct was

fine [Doc. 46-1, Awad Dep. at 72-73].

     While the Defendants claim that initiating such an investigation was a normal response [*see*

Doc. 31-8, Saikaly Dep. I at 105-06], Saikaly could remember only one instance of another similar

fraud investigation in his career at National City.  That investigation involved an employee who

admitted that he fraudulently opened accounts for individuals who were not customers of the bank

and forged their signature cards [*see id.* at 53-54].  The 'sheer weight" of this evidence makes it more

likely than not the Defendants' claimed reason for terminating Awad–his alleged improper opening

of accounts and processing of a loan–was a mere pretext for an improper motive.

     Thus, a jury could conclude that Malta was motivated by retaliation in initiating the

investigation into Awad's alleged improper activity, and that the Defendants' proffered reason for

terminating him is a pretext.  Accordingly, the Defendants are not entitled to summary judgment on

the Plaintiff's retaliatory discharge claim.

*2. Discipline*

     Awad also claims that the Defendants disciplined him in retaliation for his protected

activities.  As described above, the Defendants put Awad on probation on January 31, 2007.  This

is before the date of the EEOC filing, February 15, 2007, but one day after Awad signed the EEOC

complaint, January 30, 2007. [*See* Doc. 31-5 at 14.]  Awad also claims that the Defendants retaliated

against him for complaining to HR about his claimed discriminatory denial of promotions.  Awad

alleges that he complained to HR about the Bank's failure to promote him when he worked at the

Case No. 1:09-CV-00261
Gwin, J.

McKinley branch. [Doc. 46-1, Awad Dep. at 87-88.]  Awad has not shown that Malta and Feder, who disciplined Awad by putting him on probation on January 31, 2007, knew about the EEOC complaint at that time.  Awad has also not shown that Malta or Feder knew about Awad's earlier HR complaints about his treatment at the McKinley branch.

Moreover, even if the Court were to assume that Awad made a prima facie case of retaliatory discipline, the Defendants have offered a legitimate reason for his probation: his unsatisfactory sales performance in the second half of 2006. [Doc. 31-11 at 2, Ex. A.]   This reason has a basis in fact [*see id.*; *see also* Docs. 46, Ex. 3A-3M] and is sufficient to explain the Defendant's decision to put Awad on probation.  *See Imwalle v. Reliance Medical Products*, 515 F.3d 531, 545 (6th Cir. 2008). In contrast to the circumstances surrounding his termination, on this claim Awad has not made a showing that the Defendants were not actually motivated by his poor sales performance in putting him on probation.  To the contrary, the Defendants have offered evidence of other employees that they also placed on probation for failing to meet their sales goals. [Doc. 31-11, Ex. B.]

The Court finds that the Plaintiff has failed to establish a prima facie case of retaliatory discipline.  Moreover, even if the Court assumes that the Plaintiff made a prima facie case, Awad has failed to show that the Defendant's proffered reasons for his probation were pretextual.

The Court therefore grants the Defendants' motion for summary judgment with respect to the Plaintiff's claim of retaliatory discipline.

*3. Failure to Promote*

Awad claims that the Defendants retaliated against him by not promoting him to positions for which he was qualified following his complaints about discrimination and the filing of his EEOC charge.  In 2007, the Defendants did not promote Awad to the Office Manager position in Wexford.

-26-

Case No. 1:09-CV-00261
Gwin, J.

Awad also applied for, and did not receive, a credit analyst position in 2007.  The Defendants also did not approve Awad to take the Series 6 examination in 2007.  The timing of these employment decisions could suggest causation.  However, as described above, the Defendants have offered legitimate, nondiscriminatory reasons for each of these employment decisions.[7/]  Awad has failed to show that the Bank's nondiscriminatory reasons for not promoting him and for not sponsoring him for the Series 6 Exam were pretextual.   Accordingly, Awad's claim of retaliatory failure to promote fails.

*4. Hostile Work Environment*

Awad claims that the Defendants retaliated against him by "fostering hostile work conditions of employment." [Doc. 5 at 21.]  Awad alleges that "in the days, weeks and months following the [EEOC] mediation," Defendant Malta treated him in a hostile manner. [*Id.* at 7.] Awad says that Malta would yell and scream at him for no reason, and that on one occasion, in front of other employees, she said "if you don't like it, the door is wide open." [Doc. 46-1, Awad Dep. at 338-39.]

The Plaintiff has presented evidence that, following his EEOC charge, Malta acted in a way that a reasonable employee would have found "materially adverse."  *See Burlington Northern*, 548 U.S. at 67-68 ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")(internal citations omitted).[8/]  The

---

[7/]As described in Part III.A.1, *supra,* the Defendants presented evidence that Awad failed to complete the application for the office manager position, and that the individual selected as office manager was better qualified for the position; that no credit analyst positions were available at the time Awad applied and interviewed; and that Awad was not sponsored for the Series 6 exam because his sales were not consistent enough.

[8/]As described above, *see supra*, note 6, the Plaintiff has made a sufficient showing with respect to the other elements of his prima facie case: Awad's filing of the EEOC complaint was protected activity; Awad presented evidence that Malta was aware of the EEOC complaint; and the temporal proximity between the filing of the EEOC charge and
(continued...)

Case No. 1:09-CV-00261
Gwin, J.

Defendants offer no legitimate reason for Malta's hostile behavior. Accordingly, the Defendants are not entitled to summary judgment on Awad's claim of retaliatory hostile work environment.

For the reasons above, the Court **GRANTS** the Defendants' motion for summary judgment with respect to the Plaintiff's claims of retaliatory failure to promote and retaliatory discipline; and **DENIES** the Defendants' motion for summary judgment on the Plaintiff's claim of retaliatory discharge and retaliatory hostile work environment.

### C. Hostile Work Environment

Awad also claims that the Defendants discriminated against him based on his race, national origin, and religion by fostering a hostile work environment. [Doc. 5 at 9, 12-13, 18, 23, 26.] To establish a prima facie case of a hostile work environment, a plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwanted harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment unreasonably interfered with his work performance, creating a hostile work environment; and (5) the employer is liable. *See Clay v. UPS, Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).

A hostile work environment claim will lie only where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys.* 510 U.S. 17, 21 (1993). The plaintiff must show both that a reasonable person would find the environment objectively hostile and that the plaintiff personally found the conduct severe or pervasive. *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 566-68 (6th Cir. 1999). Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment."

---

[8]/(...continued)
the hostile behavior is significant enough to constitute evidence of causation.

Case No. 1:09-CV-00261
Gwin, J.

*Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir.1999).

As to the final prong, an employer is liable for the actions of a co-worker "if it knew or should have known of the charged . . . harassment and failed to implement prompt and appropriate corrective action." *Barrett v. Whirlpool*, 556 F.3d 503, 516 (6th Cir. 2009)(quoting *Hafford*, 183 F.3d at 513). "In contrast, employers are vicariously liable for harassment by supervisors, and the employee need not show that the employer had knowledge of the harassment." *Id.*

The Defendants argue that Awad's hostile work environment claim fails because "the conduct that Awad complains of does not rise to the level of a hostile work environment as a matter of law." [Doc. 31-1 at 19.] In considering a discriminatory work environment claim, the Court must consider "'all of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)(quoting *Harris*, 510 U.S. at 23).

Awad alleges that his co-workers have made racist comments to him about Arabs and Palestinians since the beginning of his employment at National City. In the Boardman branch, co-workers allegedly destroyed his new credit card applications and one made disparaging comments about "Arabic people" taking jobs. [Doc. 46-1, Awad Dep. at 47, 97-98.] His supervisor allegedly told Awad that he was probably on the "most wanted or watched list." [*Id.* at 51; Doc. 47-6, Hacker Decl. at 1.] Awad says the alleged harassment continued after he transferred branches, where a supervisor allegedly forced him to work longer hours than other employees and refused to accommodate a religious holiday. [Doc. 46-1, Awad Dep. at 105-09.] Awad alleges that after National City promoted him and transferred him to a third branch, one co-worker there asked him

Case No. 1:09-CV-00261
Gwin, J.

"why Palestinians are always causing problems" and "fighting Jewish," while another co-worker sent an email to Awad suggesting that Awad was a terrorist, but later apologized and said he was joking. [*Id.* at 55, 29.]  A bank officer also allegedly said that he overheard "Rami saying he was going to blow up something" after hearing Awad speaking Arabic to his mother on the phone. [*Id.* at 54.]  When Malta promoted Awad to the consumer banking position at the Wexford branch, he claims that a co-worker told him that the Bank's customers "don't like Muslims in this country," and remarked that Awad was interested in the company's accident insurance because he was "trying to build a bomb at his house."  [*Id.* at 469, 41-42; Doc. 36-8, Phillips Dep. at 22.]  Finally, Awad alleges that Malta told Awad that he should not be in banking if he did not drink, even though Awad told Malta that drinking was against his religion.  [Doc. 31-2, Awad Dep. at 73.]  When Awad complained to Malta about the insults, she allegedly said that she "doesn't want to hear about it." [Doc. 46-1, Awad Dep. at 43.]

The Court finds that Awad has presented sufficient evidence of "pervasive" discriminatory conduct at National City that "a reasonable person would find hostile or abusive."  *See Barrett*, 556 F.3d at 514 (quoting *Harris*, 510 U.S. at 21); *see also id.* (proper standard is whether the conduct was severe "or" pervasive).  Awad's co-workers repeatedly made discriminatory or offensive comments about his being Palestinian or Arabic throughout his tenure at National City.  This behavior was not limited to a single employee, or even a single branch.  Rather, at each of the four branches that Awad worked during his three and one-half years of employment at National City, one or more of his co-workers exhibited discriminatory, intolerant, or offensive behavior toward Awad based upon his being Arabic, Palestinian, and/or Muslim.  The Court therefore holds that Awad has shown conduct that a jury could find "pervasive enough to create an objectively hostile or abusive

Case No. 1:09-CV-00261
Gwin, J.

work environment." *Harris*, 510 U.S. at 21.  *See Barrett*, 556 F.3d at 519 (district court erred in

granting summary judgment on plaintiff's hostile work environment claim where "a reasonable jury

could find that [plaintiff] was subjected to a severe or pervasive hostile work environment that

altered the conditions of her employment [where] she received a threat of physical violence for

reporting racist language, she was subjected to a regular stream of offensive comments about her

relationship with an African-American co-worker, and the same relationship was allegedly used as

a reason to prevent her from applying for improved job positions"); *Jackson*, 191 F.3d at 653-55

(reversing district court's dismissal of plaintiff's hostile work environment claim where Caucasian

employee called African-American plaintiff racially offensive names, Caucasian employees

interfered with African-American employees' equipment, creating potential safety hazard, and

persistent racial slurs and graffiti present in factory); *id.* at 662 ("[A]n abundance of racial epithets

and racially offensive graffiti could hardly qualify as offhand or isolated.  Rather, such continuous

conduct may constitute severe and pervasive harassment.")(citing *Torres v. County of Oakland*, 758

F.2d 147, 152 (6th Cir. 1985)("continuing use of racial or ethnic slurs would violate Title VII"); *see

also Armstrong v. Whirlpool*, 2010 WL 273691, at *8 (6th Cir. Jan. 26, 2010)("When a plaintiff

alleges commonplace, ongoing, and continuous harassment and provides specific examples of that

harassment sufficient for a court to judge the objective severity of that harassment, a plaintiff's

inability to recount any more specific instances of discrimination goes to the weight of her testimony,

a matter for the finder of facts").  *Cf. Smith v. Leggett Wire* Co., 220 F.3d 752, 760 (6th Cir.

2000)(evidence of "a handful of discriminatory comments by low-level employees, most of which

were not directed at [plaintiff], over a twenty-year span of time" insufficient to establish objectively

hostile work environment).

-31-

Case No. 1:09-CV-00261
Gwin, J.

Awad has also established that the Defendants could be found liable for the hostile work environment. Awad says that he complained to his managers at the McKinley and Wexford branches–Amanda Thiry and Nancy Malta, respectively–but that, despite his complaints, his supervisors failed to take corrective action and his co-workers continued to harass him. [*See* Doc. 46-1, Awad Dep. at 43, 62-64.] Awad alleges that he also reported the offensive behavior at the Wexford branch to his District Manager, Chuck Larkin. [*Id.* at 44] Although Larkin said he would try to transfer Awad, National City never transferred Awad from the Wexford branch, and his co-workers continued to harass him. [*Id.*] Moreover, National City is vicariously liable for Awad's supervisors' harassing behavior. Awad claims that several of his supervisors, including Adam Sofran, Frank Snyder, Eleanor Pee, and Nancy Malta, made offensive comments or exhibited discriminatory behavior toward him. [*See id.* at 51, 54, 73, 103, 105-109, 338-39; *see also* Doc. 47-6, Hacker Decl. at 1.]

The Court finds that a reasonable jury could find that the Defendants subjected Awad to a severe or pervasive hostile work environment. A jury could similarly find that the Defendants are liable for the hostile work environment. The Court therefore **DENIES** the Defendants' motion for summary judgment with respect to this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary judgment. The Court dismisses Plaintiff Awad's claims for race, national origin, and religious discrimination based upon disparate treatment in promotion, punishment, compensation, and termination; for retaliatory failure to promote; and for retaliatory discipline. The Court denies the Defendants' motion with respect to Awad's claims of retaliatory

Case No. 1:09-CV-00261
Gwin, J.

discharge and hostile work environment.

       IT IS SO ORDERED.

Dated: April 15, 2010                   s/       *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE