

THE CHANDRA LAW FIRM, LLC
1265 W. 6th Street, Suite 400
Cleveland, Ohio 44113-1326
216.578.1700 office
216.578.1800 fax

April 16, 2010

VIA EMAIL TO ADDRESSEE

Honorable James Gwin
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1838

  Re: *Awad v National City Bank, et al*, Case No: 1:09CV00261

Dear Judge Gwin:

  We, the undersigned counsel for Plaintiff Rami Awad, are writing to you under Local Rule 37.1 in the hope that Your Honor may be of some assistance in resolving an ongoing discovery dispute. We have made a sincere, good faith effort to resolve the dispute with counsel for Defendants but have been unable to do so. The documentation Plaintiff seeks continues to be relevant following this Court's April 15, 2010 Opinion and Order and, under Fed. R. Civ P. 26(b)(1), remains "reasonably calculated to lead to the discovery of admissible evidence." It may, for instance, assist Plaintiff in demonstrating that, before filing his first EEOC charge, he held a reasonable belief that Defendants had engaged in discriminatory conduct toward him. Plaintiff of course also maintains an interest in completing and preserving the record for purposes of any appeal or motion under Fed. R. Civ. P. 60(b).

  By way of background, Plaintiff propounded his initial discovery requests on October 12th, 2009. (To avoid over-burdening the Court, Plaintiff does not attach to this letter his discovery requests, Defendants' responses, or the parties' numerous written exchanges. All these materials, however, can readily be made available should the Court desire to review them.) Since noting several deficiencies in Defendants' Response, we have made three additional requests to resolve these deficiencies—on November 22nd, 2009; December 21st, 2009; and March 11th, 2010. In addition, Plaintiff also propounded a Second Request for Production of Documents on March 11th, 2010, which for the most part sought documents already requested. Although Defendants have produced certain documents in piecemeal fashion over the past six months, we still have not received many requested documents and now find ourselves at an impasse. Because the trial date is less than two weeks away, we have decided to press compliance with Plaintiff's outstanding requests. We must insist in particular on certain absolutely essential items, without which Plaintiff will be severely prejudiced at the upcoming trial.

## EMAILS:

In one or more document requests, Plaintiff asked for

(1) All emails to, from, or about Plaintiff while he was employed at different branches of National City;

(2) All emails of Nancy Malta relating to Plaintiff and generated during the time Plaintiff worked at the Wexford Branch, and during the five months after he was terminated;

(3) All emails to or from Larry Feder relating to Plaintiff. (Feder was responsible, according to Defendants, for the investment goals of Plaintiff, and was also responsible for putting Plaintiff on probation and for not allowing him to take the Series 6 exam, both of which are addressed in the Amended Complaint); and

(4) All emails to or from Vincent Pannuci (predecessor of Larry Feder who supervised the Plaintiff on his investment goals before being replaced by Larry Feder) relating to Plaintiff.

In his First Request for Production of Documents, dated October 12th, 2009 (in Document Request No.6) Plaintiff categorically asked for all emails, relating in any way, to Plaintiff's performance:

> "Please produce all documents, as defined above, and including all drafts and iterations of same, reflecting the results of any formal, informal, internal, or external investigation that took place at any time, including all witness statements and investigative notes, and drafts or iterations reflecting any change(s), regarding any complaint or allegation of misconduct, malfeasance, non-feasance, discrimination, hostile work environment, negative comments, mistreatment for any reason including, but not limited to race-discrimination, national-origin discrimination, religious-discrimination and retaliation reported by or in any way concerning Plaintiff."

Plaintiff also made email demands in Original Document Request Nos. 17 and 18. On November 7th, 2009, in a letter from Plaintiff to Defendant to cure the deficiencies, Plaintiff complained about the non-compliance on Document Request Nos. 6, 17, 18 and 23 and also identified specific emails in addition to the other emails which were not produced. He specifically identified, among others, emails (a) sent by Plaintiff to five HR managers while at McKinley Branch complaining about Plaintiff's not being given a position at National City due to his national origin and name; and (b) from Vincent Pannuci in December 2006 recommending Plaintiff for the Series 6 exam to Nancy Malta where Plaintiff was copied on the email as well.

In a December 21, 2009 letter, Plaintiff reiterated the problem about non-compliance with Document Request Nos. 6, 17, 18 and 23. After reviewing the Bank's email retention

policy, Plaintiff expressed concern that every single email produced by Defendants appeared to bolster their defense to Awad's claims while no other emails were retrieved. Therefore, Plaintiff in Request No. 6 asked for the hard drives of Nancy Malta and Larry Feder.

On February 8, 2010, instead of producing all emails relating to Awad and all emails of Nancy Malta and Larry Feder (or their hard drives), Defendants requested "search parameters" for emails retrieved for a very limited time period for Awad (1/1/2006 through 7/1/2007), Nancy Malta (3/5/2006 through 7/1/2007) and Lawrence Feder (12/29/2006 through 7/1/2007). Not wanting to restrict the production of emails to search parameters or otherwise waive his discovery rights, Plaintiff, in his March 11, 2010 letter, reiterated his demand for all emails previously requested, and also asked for the hard drive of Vincent Pannuci. While clearly reserving all rights to demand a full production of all requested emails, Plaintiff also agreed to provide some suggested search terms to help expedite the process.

Additionally, on March 11th, 2010, Plaintiff categorically and explicitly asked for all emails to, from, or relating to Plaintiff while he worked at different Branches of National City, as well as emails from Larry Feder, Vincent Pannuci, and Defendant Malta for the time period Awad worked at the Wexford Branch and for five months after his termination (Document Request No. 4 and 5 of the 2nd Request for Production of Documents.)

On March 29th, 2010, Plaintiff offered search parameters, while reiterating the demand that Defendants produce all emails asked for and not restrict the production of emails to search parameters. Plaintiff was told in a letter, dated March 31, that Defendants did not use the search terms offered by Plaintiff but used their own terms, which were wholly inadequate. Defendants claimed that they did so on March 26 because of Plaintiff's allegedly untimely response to their request for search parameters, and because it was very costly and too close to the trial. Defendants ignored the fact that Plaintiff had repeatedly asked for all relevant emails and never consented to restrict the production of emails to any particular search parameters.

Just this week, on April 13, 2010, Plaintiff's counsel received nine document boxes containing more than 29,000 pages of emails. Defendants' production was not organized in any obvious way (e.g., chronologically, by author, etc.). A letter accompanying the production stated that "[w]hile these documents may be responsive to a number of Plaintiff's document requests, they are produced in response to Requests 4 and 5 of Plaintiff's Second Request for Production of Documents." Plaintiff's counsel placed a telephone call to counsel for Defendants and was told that the emails were generated in accordance with the search terms enumerated in their March 31 letter, i.e., terms unilaterally generated by the Defendant with no input from Plaintiff, and were restricted to a very narrow time period. Despite its volume, then, Defendants' production is underinclusive and inadequate.

## INFORMATION ON PLAINTIFF'S COMPARATORS WHO OPENED UNAUTHORIZED ACCOUNTS

Defendants have stated that the "opening of unauthorized accounts" was one of the reasons for terminating the Plaintiff. In Interrogatory No. 16, Plaintiff asked that Defendants "state the name, residential and business address and telephone number of each employee of Defendants who was in the possession of an unsigned signature card, or who opened an unauthorized account or initiated or processed an unauthorized loan in the last six years." Document Request No. 28 asks for documents produced in relation to each incident covered by Interrogatory No. 16.

In response, Defendants have produced information on only two such individuals, who were accused by National City of opening unauthorized accounts in Ohio and Pennsylvania. They refuse to provide information on individuals who opened unauthorized accounts across the country, claiming the request to be geographically overbroad. Because National City is a national bank with uniform policies nationwide, however, the treatment of comparators at any branch of National City is directly relevant to Plaintiff's allegation of disparate treatment of employees accused of opening unauthorized accounts. The information sought is crucial to Plaintiff's retaliatory-termination claim, which remains intact.

## INFORMATION ABOUT COMPARATORS WHO WERE SPONSORED BY THE BANK TO TAKE THE SERIES 6 EXAM.

Plaintiff alleges in his Amended Complaint that Defendants, out of a discriminatory motive, refused to sponsor him for the so-called "Series 6" exam (which would have qualified him to become a higher-earning Licensed Financial Consultant). Defendants have claimed that that Plaintiff, an Annuity Agent, was not sponsored because of allegedly inconsistent sales. As part of his demonstration that he held a reasonable belief that he was the victim of discrimination, and for other purposes, then, it is important that Plaintiff discover information concerning the Bank's criteria for exam sponsorship.

In his Interrogatory No. 19, served October 12, 2009, Plaintiff requested information about the employees whom, in Ohio and Pennsylvania at the relevant time, the Bank sponsored to take the Series 6 exam: "Please state the name, residential and business address and telephone number, race, national origin, religion, gender, and at time of hiring, the educational qualification, professional qualification and position or title, for each individual in Ohio and Pennsylvania, whom Defendant sponsored to take the Series 6 exam in the last five years." Document Request No. 30 also requested the curriculum vitae, personnel files, and sales records for each such individual: "Please produce all documents, relating to individuals identified in No. 19 and No. 20 of the Plaintiff's First Set of Interrogatories, including, but not restricted to, complete personnel file, curriculum vitae, for the time period stated in the respective Interrogatories. Please also include monthly sales record for the

preceding three years for each of the individuals." The requested information was not produced, and the same requests were reiterated on November 7, 2009, December 21, 2009 and March 11, 2010, all to no avail.

On March 11, 2010, in Document Request No. 8 of his Second Request for Production of Documents, Plaintiff also asked for the monthly sales goals for the Annuity Agents who were sponsored to take the Series 6 exam. Document Request No. 9 requested "any documentation which reflects the act of Defendant... in sponsoring Annuity Agents for the Series 6...." With the exception of Carol Kaminski and Robert Davis (who were identified by *Plaintiff* in his deposition), Defendants have yet to identify or produce any sales figures for any employees. Even though Defendants have produced, and continue to point to, Company-wide "stack reports" for 2006 and 2007, which include monthly revenues for Carol Kaminski and Robert Davis, they have failed to provide the personnel files for, or state the monthly goals of, either individual, or to specify the months when they were sponsored for the Series 6 exam or their sales for the three preceding years. More significantly, Defendants have provided no information on any other employees sponsored by National City to take the Series 6 exam in Ohio and Pennsylvania.

Without the foregoing comparator information, Plaintiff will be handicapped in his efforts to prove, among other things, the reasonableness of his belief that Defendants harbored a discriminatory motive, and will have an incomplete record for purposes of any appeal or post-trial motion. He therefore must insist that Defendants produce:

- The names, race, national origin and religion, curriculum vitae, personnel file of employees sponsored for the Series 6 exam in Ohio and Pennsylvania in the preceding five years;
- Monthly sales numbers and monthly minimum/goals for each such individual for the preceding three years;
- Documentation reflecting the Bank's sponsorship of each such individual.

### INFORMATION ABOUT COMPARATORS WHO WERE PUT ON PROBATION

Plaintiff's Amended Complaint includes a charge that, out of a discriminatory motive, Defendants placed him on probation on January 31st, 2007. Defendants maintain that he was put on probation for allegedly poor performance on investment goals (monthly sales) as an Annuities Agent. In Request No. 6 of his Second Request for Production of Documents, dated March 11, 2010, Plaintiff asked for the "monthly sales goal and the monthly sales of all Annuity Agents and LFC/LFS agents for two years preceding the time they were put on probation between the years of 2006 and 2008 by the Defendant..." Defendants have not produced the monthly sales goals and monthly sales of LFCs/Annuity Agents for two years before they were put on probation during 2006, 2007 and 2008. This failure has prejudiced Plaintiff in the ways described above.

## INFORMATION ABOUT COMPARATORS ON THE NORTH HILL DISTRICT INVESTMENT TEAM OF LAWRENCE FEDER.

Plaintiff worked on the investment team of Lawrence Feder, in the North Hill District, which covered around 9 branches and 9 licensed bankers. Plaintiff alleged in his Amended Complaint that the Bank (Lawrence Feder and Nancy Malta in particular), out of a discriminatory motive, placed him on probation on January 31st, 2010 for allegedly poor performance on his investment goals (monthly sales). In their Motion for Summary Judgment, Defendants cite documentation reflecting that Lawrence Feder imposed disciplinary action, including probation, on four members of the North Hill District investment team in 2007, 2008 and 2009 for their poor performance on their investment goals (monthly sales). Therefore, the sales records and the monthly sales data of licensed bankers in the North Hill District between 2006 and 2009 are relevant to proving whether Plaintiff was discriminatorily put on probation.

In a December 29, 2009 request to cure deficiencies in discovery, Plaintiff asked (in No. 25) that Defendants "provide the minimum monthly goals for individual LFC/AA agents for the North Hill District for the years of 2006, 2007, 2008 and 2009." And on March 11th, 2010, in another request to cure deficiencies, Plaintiff observed that "Defendant continues to fail to provide the minimum monthly goals and the monthly sales numbers for individual LFC/AA agents for the North Hills District for the years of 2006, 2007, 2008 and 2009." In a Second Request for Production of Documents, also served March 11, Plaintiff asked for "...monthly sales data and monthly minimum sales goal for 2006, 2007, 2008, 2009, and complete personnel file.........for all LFC, LFS, Annuity Agents who worked in the North Hill District group at any time from 2006 to 2009...." This information has yet to be produced in full.

Plaintiff accordingly should be provided with:

- Personnel files of all Licensed Bankers (LFC/LFS/Annuity Agents) who worked at the North Hills District for any time period between 2006 and 2009;
- The monthly sales data and monthly minimum goals of the above employees for 2006, 2007, and 2009.

To date, Defendants have provided "stack reports" reflecting monthly sales, for 2006 and 2007, of Licensed Bankers who worked at National City. But Lawrence Feder has admitted in his deposition that he maintained a sales chart setting forth monthly minimums and monthly sales for North Hills District agents and has produced the chart for 2008, marked NCB 581. Plaintiff has produced a similar chart for January-June of 2007. It therefore should not be a problem for Defendants to produce the monthly charts for all of 2007 and 2009. In addition the Defendant should produce the monthly minimum goals for 2006 and personnel files for all Licensed Bankers of the North Hill District between 2006 and 2009. Without such information, Plaintiff will be prejudiced in the ways described above.

## INFORMATION ABOUT COMPARATORS WHO WORKED AT THE WEXFORD BRANCH UNDER DEFENDANT NANCY MALTA

In his original Document Request No. 25, dated October 12th, 2009, Plaintiff asked that Defendants "produce the monthly sales record for all individuals identified in No. 11 of the Plaintiff's First Set of Interrogatories for the time period starting from January 1, 2004 until December 31, 2007 ..." Interrogatory No.11 identified individuals "who were working at any of the branches of Defendants at the same time while Plaintiff was also working at those respective branches, since January 5, 2004 until his termination....."

In his December 21, 2009 request to cure deficiencies, Plaintiff (in No. 25 (D)) additionally asked for "comparable records created by Ms. Malta for all employees of the Wexford Branches from 2004 to 2009 which were produced by the Defendant for the Plaintiff (NCB 580)" and reminded Defendants that "Malta admitted in her deposition (exhibit 10 – Malta Deposition) that Ms Malta created those records for all employees of the Wexford Branch."

Defendants responded by treating this request as an additional demand and, 30 days later per Fed. R. Civ. P. 34, responded that "Defendants agree to produce comparable records created by Nancy Malta for Benjamin Swallow (Plaintiff's replacement), to the extent such records are available. Defendants are currently searching for such records and agree to supplement this response accordingly." Defendants disregarded Plaintiff's request for data concerning "all employees" of the Wexford Branch from 2004 to 2009. In his March 11 letter to cure deficiencies in discovery, Plaintiff reiterated the above request set forth in 25(D), again to no avail.

In the spirit of reasonableness and cooperation, and in consideration of the short period remaining before trial, Plaintiff does not here seek all sales data for all employees who worked with the Plaintiff at the various branches (although he does not waive this request either). Plaintiff does request, however, that Defendants produce the data requested in 25(D) on December 21st, 2010 and reiterated on March 11, 2010. The data was clearly spelled out in the December 21st demand to include:

> Comparable records created by Ms. Malta for all employees of the Wexford Branches
> from 2004 to 2009 which were produced by the Defendant for the Plaintiff (NCB 580). Ms.
> Malta has admitted in her deposition (exhibit 10- Malta deposition) that Ms Malta
> created those records for all employees of the Wexford Branch

## STACK REPORTS DO NOT HAVE THE MONTHLY MINIMUM SALES NUMBERS/GOALS

In various responses to the Second Request for Production of Documents, dated March 11, 2010, and in responses on March 18 to the request to cure deficiencies, Defendants

rely upon the "stack reports" produced for the years of 2006 and 2007. These reports contain the monthly sales data of licensed bankers working at National City. In the absence of monthly minimum goals, however, such individual sales numbers provide a very incomplete picture about the performance of any given individual licensed banker. Plaintiff has already asked for the monthly minimums, both in Document Request 25 (B) on December 21st, 2010 and again on March 11, the 2010. Defendants have refused to provide them, characterizing Plaintiff's request as "unduly burdensome," even though the raw numbers in the absence of monthly goals are meaningless. Defendants also maintain that they should not be asked to produce the monthly minimums for LFCs because Awad was not an LFC, even though Defendants themselves, in an effort to disprove Plaintiff's claims of being put on probation due to a discriminatory motive, invoke the counseling and probations give to other LFCs for their failure to meet sales goals.

## INCOMPLETE ANSWERS TO QUESTIONS ABOUT BENEFITS/COMMISSION GIVEN TO PLAINTIFF BY NATIONAL CITY

In Request No. 9 of his First Set of Interrogatories, dated October 12th, 2009, Plaintiff asked that Defendants "state the cost of any medical plan, stock plan, pension plan and any other benefit provided to Plaintiff for each year of his employment with Defendant and state what the costs would be, to Defendants and to Plaintiff, through the present if Plaintiff were still employed in the position he held at the time of his termination." Defendants' Response stated details about the medical plan but was silent on any stock plan or pension plan. While finalizing his expert report, Plaintiff fully recognized the significance of this omission. Defendants were asked to supplement their answer but have failed to do so.

Interrogatory No. 8, similarly, asked that Defendants "state the salary, bonuses, commissions, and merit increases received by Plaintiff for each year of his employment with Defendants." Defendants' Response stated the merit increases and salary, but did not state the commissions. While finalizing his expert report, Plaintiff fully recognized the significance of this omission. Defendants were asked to supplement their answer but have failed to do so.

## PERSONNEL FILES OF COMPARATORS WHO WERE GIVEN POSITIONS THE PLAINTIFF APPLIED FOR

Plaintiff alleges in his Amended Complaint that National City discriminatorily denied him various positions for which he applied. In his original Request No 20 for Interrogatories, dated October 12th, 2009, Plaintiff accordingly asked for "the titles, total compensation package, and location of all jobs with Defendants for which Plaintiff applied but was not given the position, including, but not restricted to, the positions of Office Manager, RDP, Credit Analyst, Financial Analyst and various other open positions with Defendants during the term of Plaintiff's employment with Defendants. Please include the name, residential and business address and telephone number, race, religion, national origin,

and at time of hiring, educational qualification and professional accomplishment, of each individual who was given the position for which Plaintiff applied." And, in Document Request No. 30, Plaintiff asked for "all documents, relating to individuals identified in No. 19 and No. 20 of the Plaintiff's First Set of Interrogatories, including, but not restricted to, complete personnel file, curriculum vitae, for the time period stated in the respective Interrogatories. Please also include monthly sales record for the preceding three years for each of the individuals."

Defendants have produced resumes and information on some of the jobs applied for by the Plaintiff. However, they object to the Request for personnel files of every employee who got a job for which Plaintiff applied as 'overly broad' and 'unduly burdensome.' Plaintiff has reiterated the demand for the above information in all three requests to cure deficiencies in discovery. In view of the looming trial date, Plaintiff (without waiving his original requests) confines the present request to the production of personnel files of employees who were given the position of 'Office Manager' and 'Credit/Financial Analyst', including, but not limited to, Douglas Neese and Benjamin Swallow. Plaintiff remains entitled to this documentation both in connection with his remaining claims and in the interest of completing and preserving the record.

Counsel for Plaintiff appreciate the Court's indulgence with regard to what is admittedly a technical and tedious set of discovery issues, as well as its assistance in resolving them. Should you have questions or concerns, please contact me at the number above.

Sincerely,

Donald Screen

Cc: Gary Lieberman, Edwards Angell Palmer & Dodge
Paul Castillo, Karen Giffen, and Carol Rendon, Giffen & Kaminski